Kalima JENKINS, by her friend, Kamau AGYEI, Carolyn Dawson, by her next friend, Richard Dawson, Tufanza A. Byrd, by her next friend, Teresa Byrd, Derek A. Dydell, by his next friend, Maurice Dydell, Terrance Cason, by his next friend, Antoria Cason, Jonathan Wiggins, by his next friend, Rosemary Jacobs Love, Kirk Allan Ward, by his next friend, Mary Ward, Robert M.

Hall, by his next friend, Denise Hall, Dwayne A. Turrentine, by his next friend, Shelia Turrentine, Gregory A. Pugh, by his next friend, David Winters, on behalf of themselves and all others similarly situated, Appellees,

American Federation of Teachers, Local 691, Appellee,

v.

The STATE OF MISSOURI; Honorable John Ashcroft, Governor of the State of Missouri,

Wendell Bailey, Treasurer of the State of Missouri,

Missouri State Board of Education: Roseann Bentley, Raymond McCallister, Jr., Susan D. Finke, Thomas R. Davis (Presiding), Gary D. Cunningham, Rebecca M. Cook, Sharon M. Williams, Members of the Missouri, State Board of Education, Robert E. Bartman, Commissioner of Education of the State of Missouri, Appellants,

and

School District of Kansas City, Missouri, Claude C. Perkins, Superintendent thereof, Appellees,

Icelean Clark, Bobby Anderton, Eleanor Graham, John C. Howard, Craig Martin, Gay D. Williams, Kansas City Mantel & Tile Co., Coulas and Griffin Insurance Agency, Inc., Lucille Trimble, Berlau Paper House, Inc., Andrew J. Winningham, Intervenors–Appellees.

No. 91–1398.

United States Court of Appeals, Eighth Circuit.

Submitted June 25, 1991.

Decided Aug. 30, 1991.

Michael Fields, Jefferson City, Mo., for appellants.

Kevin Lanigan, Washington, D.C., for appellees.

Arthur Benson, Mark Bredemeier, Kansas City, Mo., for intervenors-appellees.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and HEANEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The State of Missouri, in the ongoing Kansas City, Missouri, School District litigation, appeals from a district court[1] order refusing to require the KCMSD to increase the property tax levy on KCMSD taxpayers. The State argues that the levy must be raised because it is insufficient to allow the KCMSD to pay its current share of desegregation obligations and repay the State for past desegregation obligations the State has been required to pay. The

State asserts that the Supreme Court's decision in *Missouri v. Jenkins*, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), insofar as it affirmed the judgment of this court in *Jenkins v. Missouri*, 855 F.2d 1295 (8th Cir.1988) (*Jenkins II*),[2] requires that the KCMSD pay in full its present and past obligations. The district court rejected the State's request, which would have required an increase in the property tax rate in the district of between 35 and 125 percent. The district court held that our decision in *Jenkins II* required it to set some reasonable limit on the levy that was to be established by the school board and required the State to pay sums beyond the capacity of the KCMSD. *Jenkins v. Missouri*, No. 77–0420–CV–W–4, slip op. at 6–8 (W.D.Mo. Jan. 24, 1991). The district court correctly interpreted this court's and the Supreme Court's decisions. We affirm.

In *Jenkins II*, we affirmed the district court order setting the property tax levy but prescribed a different procedure to be followed in the future. Under this procedure, the school board would be authorized to submit a proposed levy to fund its budget, including its share of the desegregation costs, subject to a reasonable limitation set by the district court. *Jenkins II*, 855 F.2d at 1314. The district court would then enjoin the application of Missouri constitutional and statutory provisions that would reduce or limit the levy below the amount submitted by the school board. *Id.* In *Jenkins II*, we also reversed the income tax surcharge. *Id.* at 1315–16.

The State petitioned for certiorari, which the Supreme Court granted. The Supreme Court reversed the portion of our decision that upheld the district court's setting of the tax levy, 110 S.Ct. at 1663, but affirmed our judgment "insofar as it required the District Court to modify its funding order." 110 S.Ct. at 1667. Following our decision, the district court had entered an order approving a property tax levy set by the school board at $4.00 per $100 of assessed

---

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

2. *See Jenkins v. Missouri*, 931 F.2d 470, 475 (8th Cir.1991) (*Jenkins IV*) for a brief history of the *Jenkins* litigation.

valuation.[3] On July 23, 1990, the district court entered an order consented to by the State and KCMSD in which they agreed that a tax levy of $4.96 was a reasonable maximum rate for the 1990 and 1991 tax years. *Jenkins v. Missouri*, No. 77-0420-CV-W-4, slip op. at 5 (W.D.Mo. July 23, 1990).

Shortly thereafter, the State filed this motion seeking an order requiring KCMSD to set a levy in accordance with the Supreme Court's decision, which it asserted requires the KCMSD to pay its full adjudicated 25 percent share of the desegregation remedy. The State asserts that the $4.96 levy will generate only 54 percent of the amount necessary to fund KCMSD's share of the desegregation budget for the 1991 fiscal year. The State argues that the order should require the school board to set the levy high enough to allow the KCMSD to fully fund its current 25 percent obligation, as well as to repay the $113,781,-011.63 that the State claims it is owed for funding past desegregation obligations of the KCMSD. The State proposed four options: (1) a levy of $11.16 to be in effect for one year, followed by a drop to $6.63, the level necessary to fund current obligations; (2) a levy of $7.68 for five years, followed by a drop to the levy necessary to fund current obligations; (3) a levy of $7.06 to pay off 20-year general obligation bonds that would be used to pay off past obligations; (4) the same as option number 3, but with a levy of $6.70. The lower levy would be based on the assumption that the KCMSD would spend only 90 percent of its annual desegregation budget.

The district court rejected the State's motion, relying on our holding in *Jenkins II* that the State has an obligation to pay any required sums that are beyond the capacity of the KCMSD. *Jenkins*, slip op. at 6-8 (Jan. 24, 1991). The district court concluded that no basis existed for the State's argument that KCMSD must now pay all of its allocated desegregation costs regardless of the availability of revenue. *Id.* at 8. The district court stressed our holding that the levy must be subject to some reasonable limitation in reference to levies in neighboring areas. *Id.* at 6-7 (citing *Jenkins II*, 855 F.2d at 1314). It concluded that its orders as modified by this court and affirmed by the Supreme Court "provide for tax increases that yield desegregation revenue to offset part of the KCMSD's share," but that this revenue "does not eliminate the State's responsibility under principles of joint and several liability to fund desegregation costs in excess of the revenue generated by a reasonable levy rate." *Id.* at 8.

The district court concluded its order by admonishing the KCMSD to "commit itself not to impose unnecessary fiscal burdens on the State simply because the desegregation remedy provides for joint and several liability." *Id.* at 8-9.

On appeal, the State essentially reiterates the arguments it unsuccessfully pressed in the district court. It argues that we must apply the Supreme Court's decision affirming our holding that KCMSD patrons could be taxed without their consent above the amounts permitted by the state constitution and statutes. The State cited language in the Supreme Court decision that each tortfeasor was required to pay "its share of the cost of the remedy if it can," 110 S.Ct. at 1665, and argued that the Court did not indicate that the KCMSD's obligation to pay its share was limited in any way and specifically did not discuss "reasonable" limits. It argues that the Supreme Court granted KCMSD the ability to raise all necessary funds over the State's objections and despite the State's offer to fund the entire remedy, if necessary, to preserve the constitutional power of its political subdivisions to control their local tax rates.

In a sense, the State's argument attempts to push the Supreme Court decision to its logical extreme. Indeed, the State flatly asserts: "Having won it[s] argument in the Supreme Court, however, KCMSD now appears to be avoiding the logical conclusion of its victory." It argues that the Supreme Court's approval of overriding state constitutional and statutory provi-

---

**3.** Future references to the levy rate will omit the phrase "per $100 of assessed valuation."

sions makes sense only in the context of a holding that the KCMSD is responsible for its full adjudicated share of the remedy.

As the State's arguments boil down to its contention that the district court misread this court's opinion in *Jenkins II* as well as the Supreme Court's decision, we set out the relevant language of those opinions.

In *Jenkins II*, after setting out the future procedure under which the school board would submit a proposed levy to collection authorities adequate to fund its budget and the district court would enjoin Missouri constitutional and statutory limitations that would limit or reduce the levy below that level, we stated:

> However, the levy must be subject to some reasonable limitation, taking into consideration rates in neighboring areas.... There are several possible approaches for such a limitation. One would be to allow the highest levy approved by any district in Jackson County, which in this case is Lee's Summit with a levy of $4.77. Another approach would be to allow a combination of the highest levies for operating expenses and bonded indebtedness ever approved by KCMSD voters. A third approach would be to allow the average of the highest two or three levies in Jackson County. The levy must, of course, be sufficient to fund the necessary desegregation programs, and we believe that it is best to leave the selection of an appropriate limitation to the district court's discretion.

> Permitting the school board to determine the amount of its levy (subject to reasonable limits) will give maximum consideration to the views of state and local officials and is least disruptive of existing state laws and procedures. The KCMSD board and county and state officials will be allowed to perform their functions as required by state law. In addition, the district court will be removed from the process of setting the levy and limited solely to establishing the maximum limit and enjoining enforcement of those provisions of Missouri law that prevent KCMSD from raising the

money to remedy the constitutional violations.

*Jenkins II*, 855 F.2d at 1314 (citation omitted).

We appended this footnote to our discussion of a reasonable limit:

> We recognize that there may be some circumstances in which the district court could justifiably find that KCMSD did not have sufficient resources to fully fund the apportionment we have affirmed today of the desegregative costs, and if it so finds, we do not preclude the district court from placing the remainder of the burden on the State.... It is our intent that KCMSD contribute its share, subject to these considerations.

*Id.* at 1314 n. 18.

After reversing that portion of the district court's judgment ordering an income tax surcharge, we stated:

> We caution that the constitutional violations must be remedied and the remedies fully funded. Any refund orders must be crafted recognizing this fundamental principle.

*Id.* at 1316. We concluded our discussion by stating:

> In our earlier en banc opinion we made clear that the remedy ordered by the district court must be fully funded.... *Should the funds that KCMSD can provide for desegregation expenses under today's decision fall short, the remainder must be paid by the State, as the orders of the district court have imposed joint and several liability on the State and KCMSD....*

> The funding provisions that we have affirmed today will continue until further order by the district court, or until KCMSD is able to fund its share of the desegregation remedy or the legislature has made other sources of revenue available for this purpose.

*Id.* (emphasis added). We appended the following footnote to this discussion:

> While we have rejected the argument urged by a number of the amici and adopted by the dissent that under this principle all costs should be borne by the State, *the State does have an obligation*

*to pay any required sums which are beyond the capacity of the school district.*

*Id.* at 1316 n. 21 (emphasis added).

In its opinion, the Supreme Court considered the modified procedure for setting the tax levy prescribed in *Jenkins II*, and held that our discussion was not dictum, as we had before us the State's appeal from the entire funding order of the district court. 110 S.Ct. at 1664 n. 18. It then looked to the district court order of January 3, 1989, following remand after *Jenkins II*, in which the court directed the school board to submit a property tax levy rate for its approval. The Court observed: "The District Court's approval of the levy was necessary because the Court of Appeals had required it to establish a maximum for the levy. *See* 855 F.2d at 1314." *Id.* at 1664 n. 18.

In answer to the State's arguments that monetary obligations that KCMSD could not meet should fall on the State rather than result in interference with state law, the Court replied: "[W]e cannot say it was an abuse of discretion for the District Court to rule that KCMSD should be responsible for funding its share of the remedy." *Id.* at 1664. The Supreme Court further stated that 42 U.S.C. § 1983, on which the Jenkins claim is based, "is authority enough to require each tortfeasor to pay its share of the cost of the remedy *if it can,* and apportionment of the cost is part of the equitable power of the District Court." *Id.* at 1665 (emphasis added).

The Court concluded its opinion by stating:

Accordingly, the judgment of the Court of Appeals is affirmed insofar as it required the District Court to modify its funding order and reversed insofar as it

allowed the tax increase imposed by the District Court to stand. The case is remanded for further proceedings consistent with this opinion.

*Id.* at 1667.

Most charitably put, the State's argument that the opinions of this court and the Supreme Court require the full burden of current and past obligations to be placed on KCMSD is untenable. The State ignores the requirement of a reasonable limit on the levy rate and the fact that it is obligated to "pay any required sums which are beyond the capacity of the school district." 855 F.2d at 1316 n. 21. The State compounds this further when it blinks the Supreme Court's affirmance of our judgment modifying the funding order. In short, the State's position is legally frivolous.[4] We need say little more in answer to the arguments asserted.

We think it appropriate to point out, however, that if the reasonable limit requirement were to be set aside, as the State apparently suggests, the tax levy in the KCMSD would greatly exceed the levy in the surrounding districts. The current rate of $4.96 is somewhat higher than the average of the highest three levies in Jackson County and is only slightly under the highest levy in that county. The $4.96 rate is comparable to the tax rate in neighboring Johnson County, Kansas.[5] The State's four proposals, requiring levy rates of $6.70 to $11.16, would result in a substantially higher tax rate in the KCMSD than in neighboring school districts.

One or two further comments are in order. We note that the State filed the motion now before us only three months after the district court entered the consent order in which the parties, including the State, agreed to a reasonable maximum levy limit

---

**4.** It is appropriate to observe that this appeal has caused an appendix of 1,295 pages to be filed.

**5.** Our decision in *Jenkins II* suggests a number of approaches the district court could use in setting a reasonable limit on the levy. As these approaches rely on comparisons with levy rates in surrounding districts, it is useful here to observe that the highest levy in Jackson County is $5.07 (in Lee's Summit), and the average of

the highest three levies in the county is $4.45. The highest levy ever approved by KCMSD voters is $4.23. An affidavit submitted by the Jenkins class states that the property tax rate in the KCMSD is comparable to the property tax rate in Johnson County. On a home with a market value of $100,000, the tax rate is about $5 higher per month in the KCMSD than in Johnson County.

of $4.96. We also observe that the State's claim that there should be no levy limit at all runs totally counter to its earlier position against enjoining state constitutional and statutory provisions to allow a levy increase.

We find it hard to believe the State can seriously make its present argument in light of our April 22, 1991, decision, which followed the District Court's order in this case but preceded by 18 days the filing of the State's brief in this appeal. Referring to our earlier decisions, we wrote: "[W]e explicitly stated that the remedy must be fully funded and should KCMSD's funds fall short, the remainder must be paid by the State...." *Jenkins IV*, 931 F.2d at 477. We also specifically pointed to footnotes 18 and 21 in *Jenkins II, see* 931 F.2d at 477, which have been earlier cited in this opinion.

Taxpayer intervenors [6] have joined in the arguments of the KCMSD, the Jenkins class, and the American Federation of Teachers, also an intervenor, asking that we set forth a number of guidelines directing future KCMSD taxation. We decline to do so because we believe this asks us to render an advisory opinion.

The State has requested an early decision in this case so that the tax assessments to be made in the fall of 1991 may proceed.

The judgment of the District Court denying the motion is affirmed.

---

6. Intervenors also appeal from the district court's consent order finding the reasonable maximum levy limit to be $4.96.